William R. Bennett, III (WB 1383)
Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendant
JH SHIPPING CO., LTD.
225 West 34th Street, Suite 402
New York, New York 10122
Telephone:    (646) 328-0120
Facsimile:    (646) 328-0121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

T.K.B. SHIPPING A/S                                          07 cv 8001 (DB)

             Plaintiff,

   - against –

JH SHIPPING CO. LTD.,

             Defendants.
------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO VACATE ATTACHMENT AND DISMISS COMPLAINT

**INTRODUCTION**

Defendant, JH SHIPPING CO. LTD., ("JH SHIPPING"), submits this Memorandum of Law in support of its motion to (1) vacate the maritime attachment obtained by Plaintiff , T.K.B SHIPPING A/S ("T.K.B.") pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims; or (2) in the alternative, significantly reduce the amount of the attachment order.

Plaintiff's attachment must be vacated under Fed.R.Civ.P.Supp. Rules B and E(4)(f) because Plaintiff has failed to allege an admiralty or maritime claim against Sinoriches as required by Rule B. In the alternative, if the Court does not vacate the order of attachment, it should significantly reduce the amount plaintiff is permitted to attach.

**FACTS**

The M/V BENEFIT WISDOM (sometimes referred to herein as "Vessel") is owned by Benefit Transport in Taiwan. In or about June 2007 the Vessel was chartered to Sekihyo Lines Ltd., who sub-chartered the Vessel to Samsun Logix, who then sub-chartered the Vessel to defendant JH SHIPPING, who in turn sub-chartered the Vessel to plaintiff TKB.

In June 2007, the Vessel sustained hull damage while in the port of Praia, Cape Verde Islands. The hull damage resulted from TKB instructing the Vessel to enter an unsafe port. As a result of the hull damage numerous claims arose by and between all of the parties in the charter chain referred to above. Arbitration is presently pending in Singapore. In addition, TKB arrested the Vessel and currently enjoys security from the Vessel's owners in the sum of $1.5 million dollars.

On September 12, 2007 plaintiff TKB filed the instant Rule B attachment against JH SHIPPING seeking security in the sum of $1.7M for overpaid hire, cost of bunker fuel, overpaid

2

charges, detention fines and lost earnings. Although the damages were itemized in Attachment 3 to Plaintiff's Complaint, there is no explanation in the Complaint how the costs and charges are due and owing by JH SHIPPING.

## GOVERNING LAW

I. <u>Motion to Vacate</u>

In a motion to vacate a maritime attachment, the plaintiff who obtained the attachment has the burden to show that the attachment should not be vacated. See, <u>Sea Transport Contractors, Ltd. v. Industries Chemiques Du Senegal</u>, 411 F.Supp.2d 386, 390 (S.D.N.Y.2006) (internal citations omitted). Two rules are particularly relevant in deciding a motion to vacate a maritime attachment; Rule B and Rule E(4)(f).

Rule B governs the process by which a party may attach another party's assets. See Fed.R.Civ.P. Supp. Rule B(l). The Court of Appeals in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.</u>, 460 F.3d 434, 437 (2d Cir. 2006) stated that "in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." 460 F.3d at 445.

Rule E(4)(f) permits the defendant an opportunity to appear before the Court to contest the attachment once its property has been restrained by the maritime attachment order. See Fed.R.Civ.P. Supp. Rule E(4)(f). Rule E(4)(f) permits any person claiming an interest in property that has been arrested or attached to a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with

these rules." Id.  Pursuant to Local Admiralty and Maritime Rule E.1, such a hearing shall take place within 3 court days.

Although the Court of Appeals has not stated exactly what a plaintiff must show to make out a "prima facie admiralty claim," many district courts that have examined this issue since Aqua Stoli have adopted the "limited inquiry contemplated by Aqua Stoli" and have adopted a basic definition of the term *prima facie*. Most recently, Judge Robert W. Sweet has noted that "of the courts in this district to have considered the issue, the majority have interpreted Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of the claim asserted in the context of a maritime attachment." OGI Oceangate Tranportation Co. Ltd. v. RP Logistics Pvt. Ltd., No. 06-9441, 2006 U.S. Dis. LEXIS 46841 (S.D.N.Y. June 26, 2007) (providing summary of cases). E.g., SPL Shipping, Ltd. v. Gujurat Cheminex, Ltd., No. 06-15375, 2007 WL 831810 at *3 (S.D.N.Y. March 15, 2007), Dolco Investments, Ltd. v. Moonriver Development Ltd., No. 06-12876, 2007 WL 1237997 at *4 (S . D.N.Y. April 26, 2007) (providing summary of cases and stating that "[t]he majority of courts in this district to have considered the issue have interpreted Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of the claim in a maritime vacatur motion").

II.    Motion to Reduce Amount of Maritime Attachment

JH SHIPPING also moves pursuant to Rule E(6) for a reduction of security. JH SHIPPING moves on the basis that TKB has sufficient security and its damages are non-existent and grossly exaggerated. Supplemental Admiralty Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given .... " Fed.R.Civ.P. Supp. Rule E(6). The district court may determine what "good cause" is as the Court of Appeals has held that "[t]he inherent power to adapt an admiralty rule to

4

the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge .... " Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965).

In Dongbu Express Co. v. Navios Corp., 944 F.Supp. 235 (S.D.N.Y.1996), the vessel charterer sued the vessel owner and obtained a maritime attachment in the Southern District of New York as well as in South Korea in support of a London arbitration. The owner of the vessel moved the district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment. Id. Judge Shira A. Scheindlin found that the charterer was oversecured and ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between the charterer's provable damages and the amount of the Korean attachment. Id. Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but noted that "the court must be satisfied that plaintiff's claims are not frivolous." Id. at 237 (citations omitted).  Here, plaintiff already has full security in the amount of 1.5 million from the Vessel and its owners, and, accordingly, the amount of the present attachment should be reduce or, in the alternative, vacated.

Similarly, in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., No. 05-7173, 2005 WL 2446236 (S.D.N.Y. Oct. 3, 2005), Judge Naomi R. Buchwald granted the defendant's motion for a reduction in the amount of security under Rule E(4)(f) and Rule E(6) where the plaintiff had failed to produce evidence to the court to justify the total amount of the attachment. Judge Buchwald ordered the release of the amount that was in excess of the funds for which there was sufficient evidence to justify attachment. Id . at *2. See also Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal, 411 F.Supp.2d 386 (S.D.N.Y.2006) (finding "good

5

cause" pursuant to Rule E(6) to reduce the amount of a maritime attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract).

Plaintiff's failure to mitigate its damages can be considered good cause to reduce the amount of an attachment. Even if an aggrieved party is otherwise blameless, it has a duty to mitigate its damages. See <u>Dongbu Express Co.</u>, 944 F.Supp. at 238. In <u>Dongbu Express</u>, Judge Schiendlin found that the plaintiff had a duty to mitigate its damages and that its claim must be offset by the savings that it could have obtained by chartering another vessel for the term of the subcharter. See also <u>Glidden Co. v. Hellenic Lines, Ltd.</u>, 315 F.2d 162 (2d Cir.1963) (holding that a "party injured by breach [of a charter party] cannot recover damages which arise by reason of his own inactivity or imprudence, and are not the necessary and natural consequences of the default of the other party").

To sustain its attachment, Plaintiff must establish that it has an *in personam* claim which is cognizable in admiralty against the defendant. <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263, 268 (2d Cir. 2002). <u>Aqua Stoli</u> elaborated that, in order to withstand a motion to vacate, plaintiff must have a "valid prima facie admiralty claim against the defendant." 460 F.3d at 445. In other words, a valid *in personam* claim against the Vessel's owner will not suffice to establish grounds for a Rule B attachment against a sub-charter.

The Second Circuit has held that the "standard for the particularity of complaints [filed pursuant to the Supplemental Rules] is more stringent than the pleading requirements of the Federal Rules of Civil Procedure." <u>United States v. 4492 Livonia Rd.</u>, 889 F.2d 1258, 1266 (2d Civ. 1989), reh'g denied, 897 F.2d 659 (2d Cir. 1990); accord, <u>United States v. $38,000.00 Dollars in U.S. Currency</u>, 816 F.2d 1538, 1547 n.20 (11th Cir. 1987); see also <u>United States v.</u>

6

<u>1,920,000 Cigarettes</u>, No. 02-Vc-437A, 2003 WL 21730528, at *3 (W.D.N.Y. Mar. 31, 2003) (in

forfeiture context, standards under Rule C(2)(b) and Rule E(2)(a) are "more stringent that the

general pleading requirements set forth in the Federal Rules of Civil procedure"). While Rule 8

of the Fed.R.Civ.P. may permit "bare-bones" liberal notice pleading, Supplemental Rule E(2)(a)

requires more. <u>Tide Line</u>, 2006 U.S. Dist. LEXIS at *23-24.

 A leading case on the proper construction of Fed.R.Civ.P. Supp. Rule E(2)(a) is

<u>Riverway Co. v. Spivey Marine & Harbor Service Co.</u>, 598 F.Supp. 909 (S.D. Ill. 1984), which

involved an *in rem* proceeding against a tugboat. The <u>Riverway</u> Court said that vessel owners

"are entitled to freedom from the threat of seizure of their livelihood upon conclusory allegations

and dubious circumstances." <u>Id</u>. at 913 (emphasis added). The Court further noted that Rule

E(2)(a)'s requirement for "[p]leading specific circumstances is one part of the process which

guards against the improper use of admiralty seizure proceedings." <u>Id</u>.

 Here, having obtained the advantage of an *ex parte* seizure remedy, Plaintiff is bound by,

yet has not met, the more stringent pleading requirements of Rule E(2)(a). Plaintiff has not

alleged an *in personam* admiralty claim against JH SHIPPING sufficient to permit the Rule B

attachment to continue, accordingly, the attachment should be vacated.

 In addition, the owners withdrawal of the Vessel frustrated the charter party between JH

SHIPPING and TKB. "Frustration of a charter party is a change of conditions so radical that

accomplishment of the commercial object of the charter is made impossible." <u>United States v.</u>

<u>M/V Marilena P.</u>, 433 F.2d 164, 167, note 1 (4th Cir.1969). When a charter is frustrated, the

charter is canceled and the parties are released from their respective obligations. 2B BENEDICT

ON ADMIRALTY § 9, at 1-75 (M. Cohen ed. 1986).

1.    The bunker claim

TKB claims that bunker valued at $217,260 remained on the Vessel after the Owner, Benefit Transport S.A., withdrew the Vessel. In a writ filed by TKB in Georgetown, (Exhibit A hereto) TKB alleged that the owner converted its fuel. Because JH SHIPPING did not exercise dominion and control over the bunker fuel, TKB cannot, as a matter of law, establish a claim of conversion. JH SHIPPING did not own the Vessel and accordingly, did not have custody, possession or control of the fuel oil and, in fact, did not use the fuel oil for its own purpose. TKB is fully secured by the owner for its claim relating to the bunker fuel and accordingly, that part of the attachment order relating to the bunker claim must be vacated.

2.    Loss of earnings

The requested security for the loss of earnings claims is grossly inflated and fails to take into consideration that TKB was obligated to mitigate its damages and charter in a Vessel. Its claim is also speculative. The Court should exercise its discretion and significantly reduced the attachment order, or in the alternative, vacate the order considering plaintiff is fully secured.

3.    Overpaid charges and detention charges

TKB fails to plead with particularity what were the overpaid and detention charges, how they were incurred, and how JH SHIPPING is liable for same. Accordingly, the attachment order relating to these claims must be vacated.

4.    TKB is fully secured

TKB Shipping is fully secured for its claims and, accordingly, the Court should vacate the order of attachment. See Donghbu Express.

8

**CONCLUSION**

For all the foregoing reasons, Plaintiff's attachment of should be vacated and or reduced.

Dated: New York, New York
      October 18, 2007

                    Bennett, Giuliano, McDonnell & Perrone, LLP
                    Attorneys for Defendant JH SHIPPING CO. LTD.


                    William R. Bennett, III
                    225 West 34th Street, Suite 402
                    New York, New York 10122
                    Telephone:    (646) 328-0120

Z:\Documents\All Files\D722 Benefit Wisdom\Pleadings\MOL-101707.doc

9

# EXHIBIT A

*To: Wm L/Jimmy    Fm: BENEFIT WISDOM*    *1 /25*

2007                    NO.            DEMERARA

IN THE HIGH COURT OF THE SUPREME COURT OF JUDICATURE

ADMIRALITY JURISDICTION

BETWEEN:



                    T.K.B. SHIPPING A/S

                                            Plaintiff

                        - and -

                    The Ship "BENEFIT WISDOM"
                                            Defendant

## UNDERTAKING TO FILE AUTHORITY

I, SANJEEV DATADIN, Attorney-at-Law of lot 78 Hadfield and Breda Streets, Georgetown, Demerara, pursuant to Order 3 Rule 8 of the Rules of the High Court Act, Chapter 3:02 undertake to file within twenty-eight (28) days hereto the Authority to Attorney-at-Law for the Plaintiff.

Dated at Georgetown, Demerara,

This 25th day of September, 2007

## ACCEPTANCE OF WRIT

I, SITA RAMLALL, Registrar of the High Court of the Supreme Court of Judicature, hereby accept the Writ of Summons filed herein subject to the above undertaking given by Mr. Sanjeev Datadin, Attorney-at-Law, for the Plaintiff herein.

................................................
                    REGISTRAR

Dated at Georgetown, Demerara,

This 25th day of September, 2007

4

2007                          NO.              DEMERARA

IN THE HIGH COURT OF THE SUPREME COURT OF JUDICATURE

ADMIRALITY JURISDICTION

BETWEEN:

**T.K.B. SHIPPING A/S**

Plaintiff

- and -

**The Ship "BENEFIT WISDOM"**

Defendant

## EX PARTE APPLICATION BY WAY OF AFFIDAVIT TO ARREST THE SHIP , "BENEFIT WISDOM".

I, **Rinee Kissoon**, Attorney-at-law of Croal St., Georgetown, Guyana, being duly sworn make oath and say as follows:

1   I am the appointed agent of the Plaintiff in the State of Guyana for the purpose of swearing this affidavit; I am specifically authorised to make this affidavit on behalf of the Plaintiff.

2   I swear this affidavit from facts within my own personal knowledge which I know to be true to the best of my information, knowledge and belief unless otherwise stated. Additionally I swear this affidavit from facts and documents provided to me by Mr. Alex Moore, Attorney at Law practising principally in the Island of Barbados with the maritime/ admiralty law firm of Steers International Legal Consultants, Castle Close, Sam Lord's Castle who are the agents of the Plaintiff.

3   The Plaintiff is a company incorporated in the Kingdom of Denmark with its registered office situated at 102b Strandvejen, 2900 Hellerup, Denmark. I have also relied upon information and documents provided to me by the Plaintiff through their

employee Neils Klaris and Thomas K. Larsen of the Plaintiff's insurers, the Danish Ship Owners' Defense Association.

4    That I swear this affidavit for the specific and limited purpose of supporting an application by the Plaintiff to arrest the ship "BENEFIT WISDOM"; hereinafter referred to as "the Vessel"; and every averment which I rely upon from a document provided to me as aforementioned shall be so stated and exhibited.



That the Vessel is at present moored at anchor midstream in the Demerara River in the Port of Georgetown, Guyana. The vessel arrived at Port Georgetown on the 19th day of September, 2007.

6    That by agreement in writing dated the 23rd march, 2007 there existed a time charter made between the Plaintiff as charterer and JH Shipping, the disponent owner. This agreement shall hereinafter be referred to as "the Charterparty". Hereto annexed is a true copy of the said Charterparty marked "A".

7    The Plaintiff's claim in this action does not arise under the Charterparty, and this document is provided only to clarify the background to the Plaintiff's claim.    The Defendant, Benefit Transport S.A., whose address is Panama City in the Republic of Panama, is the registered owner of the vessel. There are two superior charterers of the vessel in the chain of charterparties between JH Shipping and the Defendant.

8    Pursuant to the charterparty (clause 2) the Plaintiff was to provide and pay for all fuel ("bunkers") to be used during the charter period. The vessel uses two grades of fuel, intermediate fuel oil ("ifo") and marine diesel oil ("mdo"). The Plaintiff paid for all fuel on board the vessel at the time of delivery (in accordance with clause 3 of the charterparty).    The Plaintiff

purchased additional ifo and mdo on 21st June 2007. The purchase price for the ifo was US$401 per metric tonne. The Plaintiff purchased additional mdo on 1st September 2007 at a price of US$742 per metric tonne. At all material times the Defendant was bailee of the Plaintiff's bunkers and / or owed a duty of care to the Plaintiff not to cause or permit the Plaintiff's bunkers to be used contrary to the Plaintiff's lawful orders and / or not to convert the Plaintiff's bunkers to its own use and / or to cause or permit the conversion of the Plaintiff's bunkers to the use of third parties. Hereto annexed and marked "B" is a true copy of the first hire statement showing bunkers purchased on delivery. Hereto annexed and marked "C" is a true copy of bunker receipt dated 20th June 2007; and hereto annexed and marked "D" is a true copy of bunker purchase confirmation e-mail dated 31st August 2007;

9    The Vessel was delivered into the charter service at 22:54 hours GMT on 3rd April 2007. The vessel was due to be redelivered not later than 24:00 hours on 30th November 2007. On 6th September 2007 the vessel was at the port of Portsmouth, U.S.A. The Plaintiff instructed the vessel to proceed to the Mississippi River for orders, and those orders were acknowledged by the vessel. The vessel left Portsmouth at 16:30 hours on 6th September 2007. At this time the vessel had remaining on board 679.19 metric tonnes of ifo, having a total value of (679.19 mt x US$401 ) US$272,355.19; and 56.9 metric tonnes of mdo having a total value of (56.9 mt x US$742 ) US$42,219.80. The master confirmed the departure time and bunker quantities by e-mail dated 6th September 2007. However contrary to the Plaintiff's instructions the vessel did not proceed to the Mississippi river but instead proceeded to Georgetown, Guyana, where the vessel is now loading cargo. From the time

that the vessel deviated from the Plaintiff's orders to date and continuing the Defendant has been converting the Plaintiff's bunkers to its own use and / or negligently and / or in breach of duty causing or permitting the conversion of the Plaintiff's bunkers to the use of third parties. Hereto annexed are marked as indicated below are true copies of the following documents:

(a)     The Plaintiff's e-mail dated 6th September 2007 instructing the master of the vessel to proceed to the Mississippi River for orders marked "E";

(b)     The master's e-mail dated 6th September 2007 acknowledging the instruction marked "F";

(c)     The master's e-mail dated 6th September 2007 advising the vessel's departure time and bunkers remaining on board marked "G";

10     That pursuant to the Charterparty the parties agreed as follows:

(a)     for hire to be paid semi-monthly in advance (clause 5);

(b)     for additional payments by the Plaintiff in respect of communication, victualling and entertainment (see clause 49);

In accordance therewith the Plaintiff made payments on the 31st August 2007 totalling US$229,904.47 to JH Shipping in respect of hire, communication, victualling and entertainment expenses for the period 1st to 15th September 2007. As a result of the wrongful conversion of the Plaintiff's bunkers in taking the vessel out of the Plaintiff's service the benefit of these payments has been lost to the Plaintiff. Hereto annexed and marked "H" is a true copy of the remittance confirmation provided by the Plaintiff's bank showing the said remittance on 31st August 2007, together with the like confirmation in respect of the

remittance of the first hire payment on 4th April 2007 (marked with English translations of the Danish text) as referred to herein.

11  Shortly prior to the time of the conversion of the Plaintiff's bunkers and sailing away of the vessel, the Plaintiff was negotiating a fixture of the vessel to a prospective sub-charterer at a rate of US$29,000 per day for the remainder of the charter period up to 30th November 2007.  The broker working on the fixture suggests an even higher daily rate of US$30,000, and when the vessel was offered in the market it was at a rate of US$34,500 per day.  A firm offer was made for the vessel at a daily rate of US$29,000. This reflects the minimum market value of the vessel for chartering at the date of the conversion. Compared with the rate being paid by the Plaintiff of US$17,650 per day, a rate of US$29,000 would have resulted in a daily profit to the Plaintiff of US$11,350 per day.  As a result of the conversion of the Plaintiff's bunkers and sailing away of the vessel the Plaintiff lost the benefit of this business.   The available period under the charterparty at that time was a total of 85.3125 days.  The income lost to the Plaintiff as a result of the conversion is therefore (85.3125 days x US$11,350 per day =) US$968,296.87.  Hereto annexed are true copies of the documents referred to in the paragraph herein and marked respectively



(a)  The broker's e-mail to the Plaintiff dated 29th August 2007 indicating a market rate for the vessel of US$29,000 to US$30,000 marked "J";

(b)  The Plaintiff's formal offer of the vessel at a rate of US$34,500 per day marked "K";

(c)     The prospective sub-charterer's formal offer to charter the vessel at a rate of US$29,000 per day marked "L".

12      I verily believe the following to be true to the best of my information knowledge and belief:

(a)     the nature of the Plaintiff's claim is as stated in paragraphs 8 to 12 herein; and

(b)     the aforesaid claim has not been satisfied and arises in connection with the Vessel; and

(c)     the nature of the property to be arrested is the Vessel "BENEFIT WISDOM" of the port of Panama; and

(d)     security is sought in the sum of US$1,447,702.90 plus interest and costs. If an inclusive figure is required the Plaintiff would suggest the sum of US$3,000,000.00 to take account of prospective interest and costs should the matter be contested.

13      I am informed by Mr. Alex Moore and verily believe that to date no payment has been made by the Defendant in respect of the sum claimed.

14      I am advised by Counsel, MR. SANJEEV J. DATADIN verily believe the following to be true:

(a)     the person who would be liable on the claim in an action *in personam* is Benefit Transport S.A., a company incorporated in accordance with the laws of Panama whose address is Panama City, Panama. There is now produced and shown to me marked "M" and exhibited hereto a true copy of a printout from the Equasis Ship Search website, showing Benefit Transport as the

registered owner of the vessel. The registered owner of the vessel was at all material times bailee of the Plaintiff's bunkers and negligently and / or in breach of duty has caused or permitted the conversion of these to its own use or to the use of third parties;

(b)    Benefit Transport S.A. was, when the cause of action arose, the registered owner of the vessel; and

(c)    at the time the Writ was issued, Benefit Transport S.A. was the registered owner of the vessel, in respect of which a warrant of arrest is required;

(d)    the Vessel is expected to remain moored at anchor in the Demerara River until 26th September 2007, but the Plaintiff has no control over the movements of the vessel, which is capable of departing the jurisdiction of the court at any time.

15    That in the premises I pray this Honourable court will Order that a Warrant of Arrest be issues by the Registrar for the arrest of the ship "BENEFIT WISDOM", and for the said ship "BENEFIT WISDOM" to be detained until payment of the sum claimed as damages or a bond in like sum be entered into by the ship, "BENEFIT WISDOM" and perfected to the satisfaction of the Court.

16    This affidavit is drawn upon my instructions by MESSRS SANJEEV J. DATADIN and NAVINDRA A. SINGH Attorneys at Law whom I authorise to do all acts and things necessary in that regard and their offices and address for service is at WHITWORTH CHAMBERS, lot 78 Hadfield and Breda Streets, Werk-en-Rust, Georgetown, Demerara.

*121*

17    My address for service is at the offices of my Attorneys at Law.

Rinee Kissoon

Sworn to this 25th day of September, 2007.

At Georgetown, Demerara.

BEFORE ME

COMMISSIONER OF OATHS TO AFFIDAVITS